**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ARUN N.,

    *Plaintiff,*

        v.

FRANK BISIGNANO, Commissioner of Social Security,

    *Defendant.*

Case No. 1:23-cv-03710

Hon. Beth W. Jantz

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Arun N.'s[1] application for Supplemental Security Income (SSI). The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. 7.) For the reasons stated below, Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 14) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 18) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**BACKGROUND**

On March 18, 2019, Plaintiff Arun N. filed an application for Supplemental Security Income ("SSI"), alleging disability beginning May 10, 2006. (R. 17.) The claim was denied initially on July 23, 2019, and upon reconsideration on February 6, 2020. (*Id.*) Plaintiff then requested a hearing, which was held in-person on November 2, 2022 before Administrative Law Judge

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name.

Deborah Giesen. (*Id.* at 43.) Plaintiff appeared and testified, along with a vocational expert, Mary Harris. (*Id.* at 43–77.) On November 30, 2022, the ALJ issued her decision denying benefits. (*Id.* at 14–36.)

In her written decision, the ALJ applied the five-step sequential evaluation process. (*Id.*) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 18, 2019, the application date. (*Id.* at 20.) At step two, the ALJ found that Plaintiff had the following severe impairments: migraine headaches, obstructive sleep apnea, idiopathic hypersomnolence, depressive disorder, and posttraumatic stress disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.* at 20–22.) The ALJ then determined that Plaintiff had the residual functional capacity to perform light work with additional limitations, including environmental limitations (pulmonary irritants, noise, and lighting), postural and hazard limitations, and mental limitations to simple, routine tasks involving simple work-related decisions and occasional interaction with the public. (*Id.* at 22–34.) At step four, the ALJ found that Plaintiff had no relevant past work. (*Id.* at 34.) At step five, relying on the vocational expert's testimony, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, including classifier, electrical assembly, and housekeeper. (*Id.* at 35.) The ALJ therefore concluded that Plaintiff was not disabled since March 18, 2019, the date the application was filed. (*Id.* at 35–36.)

Plaintiff sought review by the Appeals Council, and the request for review was denied, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–3.) Plaintiff challenges the Commissioner's final decision denying his Title XVI application for SSI, and the matter is before this Court for judicial review. (Dkt. 1.)

**DISCUSSION**

## I.     Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## II.     Failure to Consider Psychological Evidence

Plaintiff raises three principal challenges to the ALJ's decision. Plaintiff contends that the ALJ erred in her assessment by (1) "rejecting state agency psychological evidence;" (2) "discounting the treating neurologist opinion evidence;" and (3) "failing to set forth a legally sufficient symptom evaluation." (*See* Dkt. 14 at 7–17.) As discussed below, because the ALJ's analysis in discounting the state agency psychological evidence alone warrants remand, the Court will not address, and thus makes no ruling on, Plaintiff's other two arguments.

For claims filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 416.920c. Under this framework, medical opinions from treating sources do not receive "controlling weight." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). Instead, the ALJ evaluates the *persuasiveness* of each medical opinion using the factors set out in § 416.920c(c). *See id.* In determining persuasiveness, the ALJ considers: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant (including length of the treatment relationship, frequency of examinations, purpose and extent of treatment, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.920c(c). Although all five factors must be considered, the regulation identifies supportability and consistency as the "most important" factors. *Albert*, 34 F.4th at 614.

"Supportability" focuses on the extent to which the medical source supports the opinion with relevant objective medical evidence and explanation. *Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir. 2025). The more the evidence and explanation support the opinion, the more persuasive the opinion is. *Id.* "Consistency" addresses how consistent the medical opinion is with other evidence in the record, such that the more consistent the opinion is with the other medical evidence, the more persuasive it is. *Id.* Because supportability and consistency are the most important factors, the ALJ must explain how those two factors were considered in the decision. *See* 20 C.F.R. § 416.920c(c). The ALJ may, but is not required to, explain how the remaining factors were considered. *Albert*, 34 F.4th at 614.

The ALJ's analysis in this case of the state agency consultants' opinions lacks sufficient explanation and supporting evidence. The ALJ's reasoning as to the persuasiveness of these opinions is as follows:

> "The undersigned has considered the opinions provided by the state agency psychological consultants, Dr. M.W. DiFonso and Dr. Russell Taylor (Ex. 1A; 3A). The undersigned

finds their opinions are not persuasive as they are not well supported and inconsistent with the medical evidence. In support of their opinions that the claimant had cognitive, social and concentration deficits due to his mental impairments, Dr. DiFonso and Dr. Taylor cited the mood abnormalities, but did not cite any other clinical findings or provide any more detailed explanation for the basis for their opinions (Ex. 1A; 3A). In addition, their opinions are inconsistent with the medical evidence. While the record does indicate that the claimant reported difficulty concentrating, he alleged that those difficulties were caused by migraine related pain, not his mental impairments. In addition, while the state agency psychological consultants concluded the claimant's mental impairments caused deficits in his concentration and ability to interact with others, none of the mental status exams performed by Dr. Roberts or any of the claimant's other treatment providers showed any deficits in the claimant's concentration, attention or ability to relate to them appropriately due to his mental impairments. . . ." (R. 32.)

Plaintiff challenges the ALJ's assessment of persuasiveness arguing that the consultants (1) did identify evidence other than mood abnormalities; (2) found mental impairments other than migraines that caused concentration limits; and (3) provided defined social limitations that the ALJ ignored in crafting Plaintiff's RFC. (Dkt. 14 at 7–9.)

The Commissioner responds to Plaintiff's first argument by acknowledging that the ALJ summarized Plaintiff's reported symptoms, including depression, poor concentration/focus, poor sleep, apathy, hopelessness, and helplessness, but contends that any omission was not a factual error because these reports constitute subjective complaints rather than clinical findings. (Dkt. 19 at 3–4.) As to the second argument, the Commissioner characterizes Plaintiff's position as an improper request to reweigh the evidence, emphasizing that Plaintiff himself attributed his concentration difficulties to migraines in his hearing testimony, function report, and consultative examination. (*Id.* at 4.) The Commissioner further maintains that the ALJ did not conduct an "improper medical assessment" because the record lacked objective findings supporting additional concentration-related limitations. (*Id.*) Finally, regarding the third argument, the Commissioner concedes that "the ALJ may not have explicitly discussed the specific limitation on interaction with supervisors when analyzing Dr. Taylor's opinion." (*Id.* at 5.) Nevertheless, the Commissioner argues

this omission is not reversible error because (1) mental status examinations do not document deficits in Plaintiff's ability to relate appropriately to others; (2) the ALJ addressed similar interaction limitations in evaluating Dr. Jennifer Roberts' opinion[2]; and (3) the ALJ is required to provide only a minimal articulation of her reasoning. (*Id.* at 4–5.)

In essence, the ALJ found the state agency psychological consultants' opinions unpersuasive because they supposedly relied only on "mood abnormalities," failed to identify other supporting clinical findings, and reached conclusions that were inconsistent with the broader medical record. But that explanation does not sufficiently engage either the substance of the consultants' opinion(s) or the evidence the ALJ herself summarized elsewhere in the decision.

As an initial matter, the ALJ is incorrect in her assessment that Dr. DiFonso and Dr. Taylor merely cited mood abnormalities. (R. 32.) Dr. DiFonso, for instance, specifically referenced Plaintiff's psychological records documenting "depression, poor concentration/focus; poor sleep; apathy; [and] hopelessness and helpless." (*Id.* at 83–84.) The same is true for Dr. Taylor, who cited those same records as well as Dr. Roberts' report that Plaintiff "struggle[s] with pain and [is] frustrated that it is distracting him and making it difficult for him to concentrate." (*Id.* at 99–101.) Indeed, the Commissioner even concedes that, "it is true that the prior administrative medical findings summarized the medical evidence, including plaintiff's allegations that he was experiencing symptoms of depression, poor concentration/focus, poor sleep, apathy, hopelessness, and helplessness (AR 84, 99 discussing AR 622)." (Dkt. 19 at 4 (responding to Plaintiff's contention that, "the

---

[2] The ALJ's "discussion" of Dr. Roberts' opinion, where Dr. Roberts identifies a limitation with interacting with supervisors, is as follows: "While Dr. Roberts concluded the claimant would have difficulty interacting with coworkers and supervisors due to his mental health issues, her exams repeatedly indicated that the claimant had no issues interacting with her during psychotherapy sessions as she repeatedly indicated that the claimant was interactive during appointments as late as September 2022." (R. 31.)

ALJ was factually inaccurate by stating that Drs. DiFonso and Taylor did not cite to any findings other than plaintiff's mood abnormalities to support their opinions.").) Nowhere in the ALJ's opinion does she acknowledge, let alone analyze, the fact that the state agency psychological consultants relied on more than mood abnormalities in their assessments. The ALJ's failure to address this record evidence constitutes factual error. *See Francisco M.-L v. Kijakazi*, No. 21 C 3524, 2022 U.S. Dist. LEXIS 177319, at *17–18 (N.D. Ill. Sep. 29, 2022) (finding that the ALJ committed factual error in determining that the record lacked evidence of abnormalities in attention levels where other portions documented concentration, attention, and memory issues); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("[R]eversal and remand may be required . . . if the ALJ based the decision on serious factual mistakes or omissions.").

And even if the state agency psychological consultants did not cite evidence other than mood abnormalities (they did), the record reflects that the consultants did not merely cite mood abnormalities in the abstract; they also articulated specific functional limitations. Dr. DiFonso opined that Plaintiff could perform one to two step tasks and multiple-step tasks, but with moderate limitations arising from Plaintiff's mental impairments (R. 28, 32, 89), and Dr. Taylor further opined that Plaintiff would function best in a predictable work setting with social interactions that were "infrequent, brief and largely task-specific" rather than collaborative, (*id.* at 29, 32, 106). Those are functional assessments, not bare diagnostic labels. *See* 20 C.F.R. § 416.921 ("[A] physical or mental impairment must be established by objective medical evidence" rather than a statement of diagnosis). So even if the ALJ ultimately chose not to adopt them, she still had to explain why those concrete functional limitations were unsupported by the consultants' explanations or inconsistent with the longitudinal evidence in the record. *See* 20 C.F.R. § 416.945(a)(1); *Young v.*

7

*Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citing parallel section 20 C.F.R. § 404.1545(a)(1)) ("The RFC must be assessed based on all the relevant evidence in the record"). She did not.

That gap is especially important because the ALJ's own summary of the treatment record included evidence that could support the consultants' conclusions. The ALJ acknowledged that Plaintiff began psychotherapy with Dr. Roberts in May 2019 and, at intake, reported depression, poor concentration and focus, poor sleep, and apathy. (R. 28, 677–79.) The ALJ also recognized that Dr. Roberts documented mood abnormalities over time, even though later mental status examinations (particularly from May 2021 forward) showed good attention and concentration and intact cognitive functioning. (*Id.* at 29.) That mixed record may well have permitted the ALJ to find the agency consultants' opinions less persuasive. However, the ALJ was not permitted to dismiss the consultants' opinions, in light of Dr. Roberts' psychotherapy records, (*id*. at 587, 633, 638, 809, 811), with only the observation that mental status examinations did not show deficits in concentration, attention, or social functioning, (*id.* at 32).[3] That limited and cursory reasoning sidesteps the central issue: whether the longitudinal psychotherapy evidence (including Plaintiff's reported symptoms and the persistence of abnormal mood findings) supported at least some of the consultants' proposed mental limitations. An ALJ must confront evidence that supports a medical opinion and explain why that evidence does or does not carry the day. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (an ALJ must do more than merely state that testimony is unsupported by the medical evidence in order to reject it). Because the ALJ did not do so here, the

---

[3] The ALJ provided a long list of exhibits that purportedly support this conclusion, but provides no analysis about these exhibits other than the cursory citation to them. (R. 32.) The ALJ's citation, for reference, is as follows: "(Ex. 13F/15, 17, 20, 23, 26, 29, 32, 35; 19F/25, 27, 29, 31, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 58)."

Court cannot trace the path of reasoning from the evidence to the finding that the consultants' opinions were unpersuasive. *See Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

Additionally, the same problem appears in the ALJ's treatment of the consultants' social limitations ("moderate" as opined by Dr. DiFonso (R. 89), and "reduced" as opined by Dr. Taylor (R. 106)). The ALJ discounted these limitations, in part, on the ground that "moderate social restrictions" or "reduced social demands" were "vague" and "not stated in vocationally relevant terms." (R. 32, 89, 106.) But Dr. Taylor's opinion was not so imprecise. Dr. Taylor specifically explained that Plaintiff would do best in a setting where social interactions were infrequent, brief, and largely task-specific rather than collaborative. (*Id.* at 29, 32, 106.) The ALJ's decision does not explain why that description could not be translated into vocationally relevant restrictions, such as limits on coworker or supervisor interaction, or restrictions on teamwork and collaborative tasks. That omission is especially striking because the ALJ *did* translate the evidence into a social restriction: a limitation to only occasional interaction with the public. *See Moore v. Colvin*, 743 F.3d 1118, 1127–28 (7th Cir. 2014). In other words, the ALJ found the evidence sufficient to support a public-interaction limitation, yet gave no explanation for rejecting comparable limitations involving coworkers or supervisors. If the record supported restricting one broad category of social interaction, the ALJ had to explain why it did not support the others identified by the consultants. *See Moore*, 743 F.3d at 1127–28 (remanding where the ALJ did not sufficiently relate specific limitations to certain impairments). Without that explanation, the decision presents an internal inconsistency and thus fails to build the required logical bridge. *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) ("[A]n internally inconsistent opinion by an ALJ is likely to fail to build a logical bridge between the evidence and the result.").

The Commissioner's response does not cure that deficiency. The Commissioner argues that the additional material cited by the consultants consisted only of subjective complaints rather than objective clinical findings. (Dkt. 19 at 4.) But the Court reviews the reasons the ALJ actually gave, not post hoc rationales offered in later litigation. *Hejna v. Bisignano,* No. 19-cv-5998, 2025 U.S. Dist. LEXIS 168874, at *4 (N.D. Ill. Aug. 29, 2025). And, the problem here is that the ALJ never adequately explained why the longitudinal psychotherapy evidence, taken together with the consultants' functional assessments, failed the supportability and consistency inquiry required by 20 C.F.R. § 416.920c. Because the ALJ's decision does not sufficiently explain why the consultants' concrete task and social limitations were unsupported or inconsistent with the record, remand is necessary.

Accordingly, remand is required for at least the ALJ to articulate with sufficient detail why she found the state agency psychological consultants' opinions to be unpersuasive. This deficiency cannot be dismissed as harmless error. Because a proper evaluation of those opinions could alter the limitations included in the RFC, and therefore the available jobs corresponding with such an RFC, the Court cannot conclude with confidence that the ALJ would reach the same result on remand. *Kennedy v. Kijakazi*, No. 22-2258, 2023 U.S. App. LEXIS 3503, at *10 (7th Cir. Feb. 14, 2023) (for an error to be harmless, a court must have "great confidence" that new evidence would create "no reasonable probability of a different outcome" on remand).

To be clear, in concluding that this issue requires remand, the Court makes no determination as to whether the state agency psychological evidence is or is not sufficient to support a different finding. The Court holds only that the ALJ failed to sufficiently articulate and explain her conclusion as to this evidence, and that this deficiency requires remand. In light of the Court's decision to remand on that issue, the Court need not address Plaintiff's remaining arguments. The

10

Commissioner should not, however, construe the Court's silence as an indication that the ALJ's initial adjudication was appropriate as to the outstanding issues.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 14) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 18) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.

DATED:  March 30, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge

11